IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JAMES C. BROWN, JR., | |
|    Plaintiff, | |
| v. | Civil Action No.: PWG-22-629 |
| DIRECTOR GAIL WATTS, et al., | |
|    Defendants. | |

**MEMORANDUM OPINION**

In his complaint filed pursuant to 42 U.S.C. § 1983, self-represented plaintiff James C. Brown, Jr.[1] alleges that Defendants violated his rights under the Fourteenth Amendment. Defendants Director Gail Watts, Officer Akinloton, and Sargent Colbert, through their counsel, have filed a Motion to Dismiss.[2] ECF No. 14. Mr. Brown has filed an opposition to the Motion as well as a Motion for Representation. ECF Nos. 16, 17.

The case is ripe for review. I find a hearing is unnecessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons that follow, Defendants' Motion will be GRANTED IN PART and DENIED IN PART, and Brown's Motion will be DENIED.

Brown moves for the appointment of counsel, asserting a need for assistance with discovery, investigations, research, and trial. ECF No. 17. A pro se prisoner does not have a general right to counsel in a § 1983 action. *Evans v. Kuplinski*, 713 F. App'x 167, 170 (4th Cir. 2017). The power of a federal district court judge to appoint counsel under 28 U.S.C. § 1915(e)(1) is discretionary, and an indigent claimant must present "exceptional circumstances." *Kuplinski*, 713 F. App'x at 170; *Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987). Exceptional

---

[1] Brown is presently incarcerated at Baltimore County Detention Center (BCDC).
[2] The Clerk shall be directed to amend the docket to reflect the correct spelling of Officer Akinloton's name.

circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it." *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by *Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel).

Upon consideration of the Motion and Brown's previous filings, I find that he has demonstrated the wherewithal either to articulate the legal and factual basis of his claims himself or has secured meaningful assistance in doing so. Moreover, the issues pending before the Court are not unduly complicated nor has it been determined that this case will proceed to trial. Therefore, there are no exceptional circumstances that would warrant the appointment of an attorney to represent Brown under § 1915(e)(1). Accordingly, his Motion is denied, without prejudice.

## BACKGROUND

The morning of March 9, 2022, Brown, a 59-year-old detainee at BCDC in protective custody, received a new cellmate, 20-year-old Omosola Tobiloba. ECF No. 1 at 2. Brown states that despite his attempt to welcome and be respectful of Tobiloba, he was hostile and made Brown fear for his life because Tobiloba looked like he wanted to kill him. *Id.* at 3. That afternoon, Brown requested that Tobiloba notify an officer that they were not getting along so that he could be transferred to a different cell; Tobiloba refused. *Id.* Brown pressed the call button himself attempting to contact Officer Akinloton, but no one answered in the control center. *Id.* Brown asserts Akinloton deliberately refused to answer Brown's call, and he did not receive a response for two hours until Sgt. Colbert answered and agreed to see if Tobiloba could be moved to a different cell. *Id.*

Brown further explains in his Supplement that Sgt. Colbert later came to his cell, and Brown expressed his fears for his life while being housed with Tobiloba. ECF No. 7 at 1. Sgt. Colbert again stated that she would see if Tobiloba could be moved. *Id.* According to Brown, Colbert left her shift at 3 p.m. and never followed up with Brown. *Id.*

Shortly thereafter, Tobiloba attacked Brown, punching and headbutting him in the face. ECF No. 1 at 4. Brown was taken to the medical department when officers arrived at his cell during count. *Id.* He complains of migraine headaches and severe jaw pain. ECF No. 7 at 2. Brown seeks monetary damages. ECF No. at 5.

## STANDARD OF REVIEW

Defendants move to dismiss, arguing that Brown's Complaint and Supplement fail to state a claim upon which relief can be granted. ECF No. 14. To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted).

## ANALYSIS

### A. Exhaustion of Administrative Remedies

Defendants raise the affirmative defense that Brown has failed to exhaust his administrative remedies. ECF No. 14-1 at 4-5. If Brown's claim has not been properly presented through the administrative remedy procedure, it must be dismissed pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215-16 (2007); *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017). Nevertheless, a claim that has not been exhausted may not be considered by this Court. *See Bock*, 549 U.S. at 220. In other words, exhaustion is mandatory. *Ross v. Blake*, 578 U.S. 632, 639

(2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Id.* (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

Ordinarily, inmates must follow the required procedural steps in order to exhaust their administrative remedies. *Moore v. Bennette*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford* 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original)). But the court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Defendants assert that Brown failed to initiate any administrative remedies. Defendants rely on Brown's Complaint, in which he responds in the negative to a question on the Court's preprinted complaint form which asks whether Brown "file[d] a grievance as required by the prison's administrative remedy procedures." ECF No. 1 at 2. Brown, however, contends in his opposition that he has exhausted his administrative remedies. ECF No. 16 at 3. As Defendants provide nothing further to demonstrate that Brown failed to exhaust his administrative remedies, the Court finds that they have failed to meet their burden to prove that Brown failed to exhaust, and therefore, the Complaint cannot be dismissed on that basis.

### B. Failure to State a Claim

Defendants also argue that Brown cannot show that any of the Defendants had the requisite knowledge required under the Eighth Amendment deliberate indifference standard. ECF No. 14-1 at 5. A failure to protect claim raised by a pretrial detainee is analyzed under the Fourteenth Amendment and the two-part inquiry established in *Farmer v. Brennan*, 511 U.S. 825 (1994). *Brown v. Harris*, 240 F.3d 383, 388-90 (4th Cir. 2001) (applying *Farmer* to a pretrial detainee's failure to protect claim); *see also Perry v. Barnes*, Civ. No. PWG-16-705, 2019 WL 1040545, at *3 (D. Md. Mar. 5, 2019) (same).

First, "[f]or a claim based on a failure to prevent harm, a person must show that he is being detained, or incarcerated 'under conditions posing a substantial risk of serious harm.'" *See Brown*, 240 F.3d at 389 (quoting *Farmer*, 511 U.S. at 834). Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or substantial risk of either injury. *Danser v. Stansberry*, 772 F.3d 340, 346-47 (4th Cir. 2014). The objective inquiry requires this Court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

Second, a plaintiff must establish that the prison official involved had "a sufficiently culpable state of mind," which, in this context, "is one of deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834 (internal quotation marks and citations omitted). This subjective inquiry requires evidence that the official had actual knowledge of an excessive risk to the prisoner's safety—"the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference." *Id* at 837.

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In his Complaint and Supplement, Brown states that based on Tobiloba's behavior, he feared for his life. ECF No. 1 at 3. Further, he attempted to tell Officer Akinloton, but was only able to reach Sgt. Colbert, to whom he relayed the situation. *Id.* Brown expressly pleads that he told Sgt. Colbert that he feared for his life because he was housed with Tobiloba. Additionally, in his opposition, he claims that Sgt. Colbert witnessed Tobiloba make threats against him. ECF No. 16 at 1. Based on the pleadings, Sgt. Colbert acknowledged that Brown believed he was in immediate danger, and Sgt. Colbert stated that she would attempt to move Tobiloba to a different cell. Drawing all reasonable inferences in Brown's favor, he has sufficiently pleaded that Sgt. Colbert had actual knowledge of the risk of harm posed by Tobiloba. Therefore, the Motion shall be denied as to Sgt. Colbert.

Brown's allegations against Officer Akinloton, however, do not rise to that of a constitutional violation. The Complaint and Supplement claim only that Officer Akinloton was on duty in the control center on March 9, 2022 and failed to respond when Brown pressed the call button on numerous occasions that day. However, Brown fails to plead any facts which raise the possibility that Akinloton was deliberately indifferent above a speculative level. "Deliberate indifference is a very high standard — a showing of mere negligence will not meet it … [T]he Constitution is designed to deal with deprivations of rights, not errors in judgment, even though such errors may have unfortunate consequences." *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999); *see also Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (describing the applicable standard as an "exacting" one). While Officer Akinloton may have been negligent by not responding to Brown's calls, Brown does not show that Officer Akinloton had actual

knowledge that Brown was at a risk of harm from Tobiloba. Therefore, Brown fails to state a claim against Officer Akinloton, and the Motion will be granted as to Officer Akinloton.

Remaining is Defendant Gail Watts. Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). Other than being named in the caption of the Complaint, Defendant Watts is not mentioned anywhere in Brown's factual allegations and will, therefore, be dismissed.

### C. Qualified Immunity

"Qualified immunity bars § 1983 actions against government officials in their individual capacities 'unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time.'" *Barrett v. PAE Gov't Servs., Inc.*, 975 F.3d 416, 428 (4th Cir. 2020) (quoting *District of Columbia v. Wesby*, ___ U.S. ___, 138 S. Ct. 577, 589 (2018)) (cleaned up); *see also Taylor v. Riojas*, ___ U.S. ___, 141 S. Ct. 52, 53 (2020); *Halcomb v. Ravenell*, 992 F.3d 316, 319 (4th Cir. 2021); *Humbert v. Mayor and City Council of Balt.*, 866 F.3d 546, 555 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 2602 (2018); *Osborne v. Georgiades*, 679 F. App'x 234, 237 (4th Cir. 2017); *Scinto v. Stansberry*, 841 F.3d 219, 235 (4th Cir. 2016); *Hunter v. Town of Mocksville*, 789 F.3d 389, 401 (4th Cir. 2015).

Qualified immunity turns on the "objective reasonableness of an official's conduct, as measured by reference to clearly established law." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An officer who makes an honest but objectively unreasonable mistake is not protected by qualified immunity. Rather, the doctrine protects officials "'who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful.'" *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (citation omitted); *accord Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012).

The Fourth Circuit has explained: "In determining whether defendant government officials are protected by qualified immunity, the court considers both 'whether a constitutional right [was] violated on the facts alleged' and 'whether the right was clearly established' at the time of the conduct in question." *Scinto,* 841 F.3d at 235 (citations omitted); *see also Cannon v. Village of Bald Head Island*, 891 F.3d 489, 497 (4th Cir. 2018). Thus, the qualified immunity analysis involves two inquiries: (1) whether the facts alleged, "[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a constitutional [or statutory] right," *Saucier v. Katz*, 533 U.S. 194, 201 (2001); and (2) whether the right at issue "'was clearly established in the specific context of the case—that is, [whether] it was clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted.'" *Merchant v. Bauer*, 677 F.3d 656, 662 (4th Cir. 2012) (quoting *Figg v. Schroeder*, 312 F.3d 625, 635 (4th Cir. 2002)). The "two inquiries . . . may be assessed in either sequence." *Merchant*, 677 F.3d at 661-62.

Qualified immunity is an affirmative defense. *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 305 (4th Cir. 2006). But, it does not merely provide a defense to liability. Rather, it provides "*immunity from* suit . . . ." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in *Mitchell*); *see Gilliam v. Sealey*, 932 F.3d 216, 229 (4th Cir. 2019), *cert. denied,* ___U.S.___, 140 S.Ct. 2641 (2020); *see also Ussery v. Mansfield*, 786 F.3d 332, 337 (4th Cir. 2015). Accordingly, the immunity is "'effectively lost if a case is erroneously permitted to go to trial.'" *Id.* (quoting *Mitchell*, 472 U.S. at 526).

"The plaintiff bears the burden of proof on the first question—i.e., whether a constitutional violation occurred . . . . [and] [t]he defendant bears the burden of proof on the second question—

9

*i.e.*, entitlement to qualified immunity." *Henry v. Purnell*, 501 F.3d 374, 377–78 (4th Cir. 2007) (internal citations omitted); *see also Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022).

As indicated, if an officer is shown to have violated the rights of a plaintiff, the court must "evaluate whether the right at issue was 'clearly established' at the time of the officer's conduct." *Wilson*, 893 F.3d at 219. This is a question of law for the court to resolve. *Ray*, 948 F.3d at 228; *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992). Notably, "even when the facts in the record establish that the officer's conduct violated a plaintiff's constitutional rights, the officer still is entitled to immunity from suit 'if a reasonable person in the [officer's] position could have failed to appreciate that his conduct would violate those rights.'" *Wilson*, 893 F.3d at 219 (quoting *Torchinsky v. Siwinski*, 942 F.2d 257, 261 (4th Cir. 1991)); *see also Williams v. Strickland*, 917 F.3d 763, 768 (4th Cir. 2019); *Greene v. Feaster*, 733 F. App'x 80, 82 (4th Cir. 2018) (per curiam) ("Even when a prison official [is shown to have violated a constitutional right of a plaintiff], qualified immunity will shield him from liability as long as his 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'") (quoting *Goines*, 822 F.3d at 170).

The second inquiry "turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). If the law at the time of the alleged violation was not "clearly established," the official will be entitled to qualified immunity because "an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Harlow*, 457 U.S. at 818. On the other hand, "[i]f the law

was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Id.* at 818-19.

Brown alleges that Sgt. Colbert failed to protect him from his cellmate even after he informed Sgt. Colbert that he feared for his life, and she witnessed Tobiloba threaten Brown. ECF No. 7; ECF No. 16 at 1. The Defendants contend that they had no knowledge of a specific threat to Brown and thus could not have disregarded any risk. ECF No. 14-1 at 6. Sgt. Colbert did not respond to Brown's statements regarding her specific knowledge.

Notably, a "question of material fact" as to whether "'the conduct allegedly violative of the right actually occurred . . . must be reserved for trial.'" *Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2005) (citation omitted). A dispute of material fact is not appropriate for resolution, either at a motion to dismiss or on summary judgment. Because I cannot resolve the factual dispute at this juncture, the issue of qualified immunity is premature, and the motion to dismiss as to Sgt. Colbert is denied, without prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' Motion is GRANTED IN PART and DENIED IN PART and Brown's Motion is DENIED without prejudice. Defendants Gail Watts and Officer Akinloton are DISMISSED.

A separate Order follows.

<u>November 7, 2022</u>  /S/
Date  Paul W. Grimm
 United States District Judge